**BRAZOS ELECTRIC POWER COOPERATIVE, INC.,**
Plaintiff,

v.

**SOUTHWESTERN POWER ADMINISTRATION, et al.,**
Defendants.

and

**Rayburn Country Electric Cooperative, Inc., Tex-La Electric Cooperative, Inc., et al., Defendant-Intervenors.**

**Civ. A. No. W–84–CA–101.**

United States District Court,
W.D. Texas,
Waco Division.

Dec. 30, 1985.

R. Coke Mills and Joseph Robert Riley, Mills, Riley & Millar, Waco, Tex., Robert A. Jablon, Cynthia S. Bogorad, Donald Weightman, Spiegel & McDiarmid, Washington, D.C., for plaintiff.

Helen Milburn Eversberg, U.S. Atty., W.D. of Tex., San Antonio, Tex., Dennis G. Linder, Mac Vassamelli, Dept. of Justice, Washington, D.C., for defendants, Southwestern Power Admin., William H. Clagett, Dept. of Energy and Donald Hodel.

Robert D. Willis, Livingston, Tex., for defendant-intervenor Southwestern Power Resources Ass'n, Inc.

Clinton A. Vince, Bernhardt K. Wruble and Paul E. Nordstrom, Verner, Liipfert, Bernhard & McPherson, Washington, D.C., Phillip E. McCleery, Sheehy, Lovelace & Mayfield, P.C., Waco, Tex., for defendant-intervenor Rayburn Country Elec. Co-op. Inc.

Ralph J. Gillis, Hingham, Mass., Robert D. Willis, Livingston, Tex., for defendants-intervenors Sam Rayburn Dam Elec. Co-op. Inc. and Sam Rayburn Mun. Power Agency, Inc.

Ralph J. Gillis, Hingham, Mass., for defendant-intervenor Sam Rayburn G & T, Inc.

William H. Burchette, Christine C. Ryan, Heron, Burchette, Ruckert & Rothwell, Washington, D.C., Richard C. Balough, Heron, Burchette, Ruckert & Rothwell, Austin, Tex., for defendant-intervenor Tex-La Elec. Co-op. Inc. and Texas Elec. Co-op. of Texas.

## ORDER

WALTER S. SMITH, Jr., District Judge.

Came on this day to be considered the motions for summary judgment filed by each of the parties. Having reviewed the numerous and voluminous briefs and supporting documents filed by all parties and after considering said material and the arguments of counsel, the Court is of the opinion that Plaintiff's Motion for Summary Judgment is properly denied and Defendants' Motions for Summary Judgment are properly granted for the reasons set forth below.

In this suit, Brazos is challenging the actions of the Defendant Southwestern Power Administration (SWPA) in, 1) failing to consider on the merits the application of Brazos for an allocation of federal hydroelectric power and energy; and 2) approving and executing contractual arrangements pertaining to the allocation of such power and energy.

Plaintiff alleges that the Federal Defendants have violated Section 5 of the Flood Control Act of 1944, 16 U.S.C. § 825s, by failing to give it preference in the sale and allocation of federal hydroelectric power and energy; the procedural requirements of the Department of Energy Organization Act, 42 U.S.C. § 7101 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* The Defendant-Intervenors, Rayburn Country Electric Cooperative, Inc., Tex-La Electric Cooperative, Inc., and Tex-La Electric Cooperative of Texas, Inc., et al. received hydroelectric power through contract allocations from SWPA, resulting from the 1980 Final Power allocations issued by SWPA. Brazos asserts that it was entitled to this power, or alternatively, that SWPA did not comply with the notice and rulemaking procedures of the Department of Energy Organization Act and the Administrative Procedure Act before allocating such power.

The Court has jurisdiction over this matter under the provisions of 28 U.S.C. §§ 1331 and 1337, the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the Department of Energy Organization Act, 42 U.S.C. § 7192.

Brazos is a generating and transmission cooperative which furnishes power and energy to its nineteen member-cooperatives, seven municipal systems and Texas A & M University. The member cooperatives serve approximately 200,000 individual consumers in 57 counties in Texas. Memorandum in Support of Motion of Brazos Electric Power Cooperative, Inc. for Summary Judgment, pp. 2–3. Brazos furnishes electric power to its customers and maintains a substantial generating capacity.

The Southwestern Power Administration is a power marketing agency within the Department of Energy and was created by the Secretary of the Interior under Order No. 1865, August 31, 1943. 8 Fed.Reg. 12,143 (1943). Its duties include marketing federal hydroelectric power from 23 different reservoir projects located in Arkansas, Missouri, Oklahoma and the eastern part of Texas into a six-state region which includes

Arkansas, Missouri, Oklahoma, Texas, Kansas and Louisiana.

The power generated at these 23 different projects is termed "peaking power" which means that the water available for power generation permits the hydraulic turbines to operate only a portion of the time needed to supply the normal load factor requirements of the customers. Therefore, this power must be supplemented, especially when rainfall is below average, by energy purchased from other suppliers. Memorandum in Support of Federal Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, p. 8.

Most of the projects are currently interconnected by transmission lines in Oklahoma, Arkansas and Missouri. These transmission lines are owned and operated by SWPA. Projects which are not interconnected with the transmission lines are integrated by contract with the interconnected system. Additionally SWPA has entered into agreements for transmission, scheduling and firming of power with investor-owned utilities and rural electric cooperatives, thereby enabling it to market power in Kansas, northern Missouri, southern Arkansas, Louisiana, Texas, and northwestern Oklahoma by using transmission lines owned by other cooperatives. *Id.* p. 9.

Under the Flood Control Act of 1944, 16 U.S.C. § 825s, SWPA is required to dispose of the hydroelectric power "in such manner as to encourage the most widespread use thereof at the lowest possible rates to consumers consistent with sound business principles." 16 U.S.C. § 825s. The Act also requires that "preference in the sale of such power and energy shall be given to public bodies and cooperatives" rather than private entities.

The energy at issue is produced from the Whitney Dam on the Brazos River and the Denison Dam on the Red River. Until the 1984 contracts which are being challenged, Brazos historically was allocated the power from the Whitney Dam by the SWPA. Power from the North Unit of the Denison Dam was sold into the SWPA integrated transmission system which could then be transmitted into various points of the SWPA marketing area except the ERCOT portion of Texas. (ERCOT refers to the north central and southern portions of Texas which have not been connected electrically with the rest of the Country and serve only intrastate needs. ERCOT is an acronym for the Electric Reliability Council of Texas.) Power from the South Unit of the Denison Dam was allocated to Texas Power & Light Company and Tex-La Electric Cooperative, Inc. for ultimate sale into the ERCOT area.

SWPA does not have any transmission facilities within ERCOT. SWPA's preference customers in Texas are not connected to the Denison Dam through direct transmission facilities. They must, therefore, contract either themselves or through SWPA with other electric utilities who do have these facilities and who can transmit power to SWPA's preference customers. In the 1940's Texas Power & Light Company (now known as the Texas Utilities Electric Company [TUEC]) contracted with SWPA to provide power from Denison Dam to SWPA's preference customers in north central Texas.

The two units at Denison Dam are disconnected from each other. The North Unit is operated in conjunction with SWPA's integrated system; the South Unit's power goes only to customers located within the state of Texas. Additionally, TP & L and SWPA agreed that TP & L could receive "excess" energy above the level contracted to be provided to SWPA's preference customers if, in SWPA's judgment, it became available. In return, TP & L would use its transmission lines and generating resources to supply load factor power (capacity and energy scheduled in accordance with a customer's demand for electricity) to SWPA's preference customers. Memorandum in Support of Federal Defendant's Motion for Summary Judgment, p. 12. This amount of capacity has varied through the years. In 1971, TP & L contracted with SWPA to use TP & L's transmission facilities to integrate Denison

Dam with the Whitney project. Brazos, which receives power from the Whitney project, is the only SWPA preference customer directly connected to the Whitney project. It is not interconnected directly with Denison Dam. At times it is necessary to wheel energy and capacity from the Denison Dam to Whitney, using the transmission facilities of TP & L, for the benefit of Brazos. SWPA does not enter into such agreements today; instead, each customer must make its own transmission arrangements.

The Whitney project is located centrally in the ERCOT portion of Texas. Brazos has purchased energy from the Whitney Dam since 1953. The Whitney Dam's capacity and energy is much less than that of the Denison Dam. As previously mentioned, Brazos is the only organization whose facilities are interconnected directly with Whitney. TP & L's transmission facilities interconnect with Brazos' facilities approximately one mile from the Whitney project.

Brazos has historically been the only customer to purchase capacity and energy from the Whitney Dam. The 1953 contract between Brazos and SWPA generally provided that Brazos was to buy all the power and energy produced at Whitney.

In 1971, Brazos' contract (Contract 1482) was structured so that SWPA was obligated to provide Brazos with 30 MW of capacity and a specific amount of energy annually even if there was insufficient water flowing through the Whitney Dam to generate such energy. Brazos' Memo in Support of Motion for Summary Judgment, p. 5. In addition, Brazos would receive excess energy when available. Until the 1984 contracts with Defendants-Intervenors, Brazos received all the excess energy generated from the Whitney Dam. Brazos' contract expires in June of 1988, at which time the 1984 contract with Defendants' Intervenors will go into effect and they will begin receiving, *inter alia*, some of the excess Whitney Dam energy.

The 1984 contracts which Brazos challenges provides for sale of the power and energy generated at the North and South Denison Units and 70% of the Whitney excess energy to Tex-La Electric Cooperative of Texas and Rayburn Country Electric Cooperative, Inc. through a scheduling agent agreement. These contracts result in TP & L receiving the 35 MW of peaking power it had previously received from the South Denison Unit, plus all the energy generated at that unit. In addition, Tex-La and Rayburn Country has agreed with TP & L to resell to TP & L all the power and energy generated at the North Denison Unit, 5 MW of "overload" capacity from the South Unit, and 70% of the excess Whitney Dam energy. In short, Brazos does not receive any energy from the Denison Dam and no longer receives all the excess Whitney energy it had once received.

As the years passed and more demands were made for energy, and with the potential expiration of some existing contracts for power, SWPA became aware that new allocations of power would be necessary. Therefore, in 1979, SWPA developed a proposal for preliminary power allocations and reallocations. The preliminary allocations, policy and criteria used in their formulation, were published in the Federal Register on August 2, 1979, as "Preliminary Power Allocations (1980–1988); Opportunities for Public Review and Comment," 44 Fed.Reg. 45,568 (1979). The notice stated:

> [SWPA] will experience the termination of a number of firm and peaking power sales contracts in the future and will also have available a limited quantity of new hydro capacity from two multi-purpose reservoir projects under construction to be operative in 1980 to 1982. *It is imperative that allocation and/or reallocation of this power be developed soon in order that the most equitable distribution to present and new preference customers in the six-state marketing area can be made for the period through 1988.* Accordingly, the attached preliminary capacity allocation has been developed which will form the basis for developing final power allocations before

the end of this calendar year. [emphasis added]

44 Fed.Reg. 45,469. An Environmental Assessment statement accompanied this Notice. In August of 1979, several public hearings were conducted to receive public comment regarding the preliminary power allocations. Brazos did not attend the hearings; nor did it submit written comments.

On March 24, 1980, SWPA published the Final Power Allocations (1980–1988). 45 Fed.Reg. 19,032 (1980). The power allocations within the six states constituting the power marketing area of SWPA provided that a certain percentage of the hydroelectric power went to each state based upon the total hydroelectric demand of preference customers in that state. *Id.* at 19,036. In addition, prior contract commitments made to preference customers were honored in accordance with SWPA's stated policy. *Id.* at 19,035.

SWPA's new allocations specifically provided that 35 MW of the North Denison Unit power would be allocated to the non-interconnected portion of Texas. The Final Power Allocations noted this reallocation of power of the North Denison Unit and its impact upon the Whitney project. 45 Fed. Reg. at 19,036. Notice was sent to SWPA customers, including Brazos. Brazos did not respond or comment.

As far as additional capacity is concerned, only those preference customers or entities which were entitled to a preference under Section 5 of the Flood Control Act of 1944 and who made requests for a new allocation, or for an allocation of additional capacity, were given consideration. Brazos did not make a formal request for additional capacity, and accordingly, received none.

(Tex-La and Rayburn Country)

The Cooperatives, who received the right to power from the Denison Dam, were not interconnected with the Dam. Since SWPA does not maintain transmission lines in Texas, it was necessary for them to make arrangements with some third party to act as a service agent on their behalf and allow them the use of their transmission lines.

TP & L was interconnected directly with the Denison Dam and Brazos had a contractual right to use TP & L's transmission facilities. Therefore, Tex-La or Rayburn could have chosen either TP & L or Brazos to act as their service agent. Ultimately, the Cooperatives selected TP & L. The Cooperatives agreed to recognize SWPA's contractual commitment to Brazos of 30 MW and 1200 KWHS/KW/year to Brazos under Contract 1482.

After negotiations had begun between the Cooperatives and SWPA to implement the Final Power Allocations of 1980, Brazos and SWPA representatives discussed the possibility of Brazos applying for additional power should some become available. Brazos' request for energy from the Denison Dam was rejected by the SWPA as being untimely.

Brazos' first challenge to the 1980 Final Power Allocations and subsequent contracts is a challenge to the notice of the 1979–1980 power proceedings. Brazos seems to also claim that the SWPA is required to conduct an antitrust review as part of its allocation proceedings.

▮ This Court finds that review of the administrative record in this case reveals that the notice published by the SWPA is adequate and sufficient and in compliance with the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.,* and of the Department of Energy Act, 42 U.S.C. § 7191. The Court also finds that there is no obligation for an antitrust review to be conducted by the SWPA as part of its allocation proceedings, either according to agency practice or regulation, or under the terms of the Flood Control Act, 16 U.S.C. § 825s, or the Department of Energy Act, 42 U.S.C. § 7101.

▮ This Court agrees with the holding of the 4th and 9th Circuits that the Flood Control Act's directive to dispose of power "in such a manner as to encourage the most widespread use" is "too vague to supply this Court with a standard by which it can judge the propriety of [SWPA's]

actions." *Electricities of North Carolina, Inc. v. Southeastern Power Administration,* 774 F.2d 1262 (4th Cir.1985). This Court also concludes that the Act's language provides no standard against which to measure SWPA's marketing decisions, "since the language is susceptible to a wide range of divergent interpretations." *Id.* at 1266, *citing Santa Clara v. Andrus,* 572 F.2d 660, 668 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978); *see also Greenwood Utilities Commission v. Hodel,* 764 F.2d 1459, 1464–65 (11th Cir.1985). Therefore, this Court concludes, as did the district court in *Electricities,* that it has no jurisdiction to review SWPA's decision regarding the marketing of power to preference customers. Brazos requests the Court to find that the power ultimately is placed into the hands of a non-preference customer, TEUC, through contractual arrangements with Tex-La and Rayburn Country. The Court finds that SWPA's marketing of power within Texas had involved no sales of federal hydroelectric power to non-preference entities in violation of the preference clause of the Flood Control Act, 16 U.S.C. § 825s. The Court declines to substitute its judgment for that of SWPA in deciding to allocate power to Tex-La and Rayburn Country, preference entities. The SWPA's practice of approving customer-selected scheduling agents, regardless of their status as preference customers or whether there are other preference customers wishing to act as a preference customer's scheduling agent, does not violate the Flood Control Act, 16 U.S.C. § 825s. This is a matter clearly within agency discretion by law and therefore not subject to judicial review. 5 U.S.C. § 701(a)(2).

The phrase "most widespread use" vests SWPA with broad discretion in deciding to whom to allocate power. Because this Court holds that SWPA's allocation decisions among preference customers was committed to agency discretion by law and not subject to judicial review, the Court does not consider whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, the Court does note that there exists a rational basis for SWPA's decision. Brazos did not participate in the proposed new allocations during the time and occasion for public comment nor did it submit any written comments, nor express any opinion as to whether it sought additional power. Brazos seeks to have SWPA become its advocate by awarding additional power to it though none was requested. Clearly, the role of advocate for one preference entity over another is outside the statutory scope of the authority of SWPA. Additionally, the economic considerations involved in dissolving the 1984 contracts are extremely compelling in not overturning the SWPA's decision.

The Court notes that Brazos is currently receiving the energy to which it is entitled under its existing contract with SWPA. Tex-La and Rayburn Country have been made aware of the contract with Brazos and are aware that the Brazos contract will be honored, even to their own detriment. Brazos suffers no injury as a result of the 1979–1980 Final Power Allocations; it continues to receive its contractual allocation. Brazos, however, seeks to receive energy to which it is not entitled by law. The Flood Control Act merely establishes a series of general directives to control the distribution of excess energy. It does not establish an entitlement to power. *Greenwood,* 764 F.2d at 1464. "Even preference entities have no entitlement to federal hydroelectric power." *Id.* at 1465 [citation omitted]. "They simply have a 'preference,' and a 'preference' is insufficient to create a due process property interest." *Id.* at 1465.

Just as the case in *Greenwood, supra,* SWPA has no transmission lines. It could have awarded the Whitney power to Brazos, TP & L or other preference customers. SWPA awarded it to Tex-La and Rayburn Country. *Tex-La* and *Rayburn Country* chose to contract with TP & L to use their transmission lines. SWPA played no role in this decision. Therefore, Brazos has no

complaint against SWPA in this regard. Brazos claims that, as a result of the contractual arrangements between Tex-La and Rayburn Country, by which these two cooperatives resell to TP & L power generated at the North Denison Unit, an amount of "overload" capacity from the South Denison Unit and 70% of the excess energy generated at the Whitney Dam in exchange for a specified monetary credit, benefits are being passed to TEUC, a non-preference customer. Brazos Memo, p. 7. The Court finds the following language from *Greenwood* to be equally convincing in the situation currently before the Court:

In order for plaintiff and other preference entities to receive SEPA power the lines of non-preference large power companies must be used for transmission. These private companies cannot be forced to transmit and wheel SEPA power without some form of compensation; to do so would almost certainly amount to an unconstitutional "taking" without just compensation. These wheeling and banking services must be paid for by either SEPA or the individual preference buyers.

*Greenwood*, 764 F.2d at 1463 (11th Cir. 1985).

In conclusion, the Court finds that the notice provisions of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* and the Department of Energy Act, 42 U.S.C. § 7191 were complied with by the SWPA in making their 1979–1980 Final Power Allocation determinations. Additionally, the Court finds that it has no jurisdiction to review SWPA's decision regarding power marketing to preference customers. For the reasons set forth above, the Court finds that the motions for summary judgment of all Defendants are properly granted. Accordingly,

IT IS, THEREFORE, ORDERED that the motion for summary judgment of all Defendants be and is hereby GRANTED. This case is hereby DISMISSED with costs adjudged against Plaintiff.